# EXHIBIT A



# MASTER SUBCONTRACT AGREEMENT
## Agreement No. 001

This Agreement is made and is effective this first day of August, 2012, by and between Patriot Group International, Inc., located at 155 Broadview Avenue, Suite 201, Warrenton, Virginia 20186 (hereinafter referred to as "PGI"), and (EOD Technology, Inc.), located at 2229 Old Highway 95, Lenoir City, Tennessee, 37771, (hereinafter referred to as "EODT"). For the purposes of this Agreement, PGI and EODT may be collectively referred to as the "Parties" or individually referred to as a "Party."

WHEREAS, PGI desires to obtain the Services of EODT as set forth herein and EODT wishes to provide said services pursuant to the terms of this Agreement.

NOW THEREFORE, in return for payment of the EODT fees set forth in Purchase Order(s) issued under this Agreement, the receipt and sufficiency of which is hereby acknowledged, the Parties agree to perform and abide by the terms and covenants of this Agreement, including but not limited to those relating to Confidential Information and non-solicitation.

The Parties agree as follows:

### 1. SCOPE OF SERVICE AND AUTHORIZATION TO PROCEED

<u>Description of Services</u>: PGI hereby retains EODT and EODT agrees to perform the professional services for the ▬▬▬▬▬▬▬▬▬▬▬▬▬ contract that are provided in Purchase Order(s) issued under this Agreement and in accordance with the Exhibit A (Statement of Work) during the term of this Agreement.

<u>Provision of Services</u>: EODT acknowledges that the services rendered hereunder shall be for the benefit or use of PGI's client, the U.S. Government (the "Client"), and that EODT shall provide services at the times and in the manner required by the Client and in accordance with the Statement of Work requirements set forth in Exhibit A.

EODT's authorization to proceed with work shall be specifically provided for in Purchase Order(s) issued under this Agreement and executed by authorized representatives of the Parties. Each Purchase Order shall set forth, as applicable: (i) the Scope of Work (hereinafter "Work," "SOW,") and any other project descriptions or information, including or referencing flow down clauses and special conditions, (ii) a schedule and due dates for deliverables, (iii) total compensation, (iv) designated PGI and EODT

authorized representatives for the Work, and (v) such other matters upon which the Parties may mutually agree.

EODT shall only be authorized to begin work after the Purchase Order Form(s) is fully executed by signature of an authorized representative of EODT and an authorized representative of PGI, and the Purchase Order is returned to EODT.

EODT shall furnish everything necessary for the performance of the Work including but not limited to all labor, personnel, facilities, equipment, materials and any other services necessary for the performance of the Work as specified by the Purchase Order(s).

EODT shall have obtained, or shall obtain, prior to commencement of the Work, at EODT's expense, all permits, licenses, certificates, authorizations, releases, or approvals required to comply with all applicable statutes, ordinances, orders, rules and regulations of the country, regional, state, and local governments having jurisdiction over the Work to be performed under this Agreement. EODT shall supply copies of any or all of the foregoing to PGI upon request.

EODT shall immediately respond to any request made by PGI to correct any defect, material or otherwise; problem; alleged breach; schedule of the Work; or contract/performance requirement issue; and thereafter, take immediate steps to take corrective action. Failure by EODT to immediately respond to a request to take corrective action and/or immediately take corrective action may result in Termination, with or without cause, of this Agreement or any applicable Purchase Order.

The Parties agree that EODT will earn ▇▇ of total contract revenue during the base year and each year that is exercised, provided EODT performs in accordance with the Master Subcontract Agreement and Purchase Order terms, and adheres to all contract flow-down requirements.

The Parties agree to jointly perform a quarterly reconciliation of the ▇▇▇▇ work share as it relates to any other unbillable costs outside the costs covered in Purchase Order(s) issued under this Agreement. The purpose of the reconciliation is to ensure equitable distribution of the unbillable costs and to ensure the work share allocation is being maintained for both parties. In the event the revenue percentages need to be reconciled to ensure a ▇▇ (EODT) ▇▇ (PGI) split, the percentage adjustments shall be made against CLINs with the same gross margins (overhead, G&A, profit, escalation, and uplift).

## 2. TERM

This Agreement shall be in effect for a base year and seven (7) subsequent option years, the terms for which are provided below. PGI will exercise the options to EODT that the Government exercises to PGI.





### 3. SCHEDULE AND DELAYS

Time is of the essence with regard to this Agreement and any Work performed under the Purchase Order(s) issued under this Agreement hereto. After commencement of the Work under a Purchase Order, EODT shall notify PGI immediately by telephone, and confirm in writing within five (5) business days, of any event or condition impairing its ability to meet the schedule applicable to the Work, together with the proposed revisions to the schedule. Delays caused by matters outside of EODT's control shall be addressed in accordance with the section entitled "Changes and Additional Compensation."

### 4. COMPENSATION

As compensation for performance of any Work, PGI shall pay EODT a sum not to exceed the Total Amount as set forth in the Purchase Order(s), subject to additions and deductions as provided for in this Agreement and/or the Purchase Order(s).

The Total Amount paid or to be paid to EODT, as set forth on the Purchase Order(s), includes any and all of EODT's costs to perform the Work, which includes but is not limited to, and for which EODT shall be liable for all income taxes, payroll taxes, levies, custom, duties, importation/exportation costs and taxes, contributions, interest accrued, penalties imposed, and all taxes, assessments or other charges levied by any government agency, authority or union on, or because of the services performed hereunder or any labor, materials, supplies, equipment, services furnished for or used in the performance of the Work, material handling, surcharges, overhead costs, general and administrative costs, any and all benefits, fees, or profit; and EODT shall defend, hold harmless and indemnify PGI and the Client against nonpayment of any of the aforementioned items.

### 5. INVOICE AND PAYMENT CONDITIONS

EODT shall invoice PGI twice per month for the Work performed under this Agreement. Invoices shall be sent to the Accounts Payable Department at PGI's Corporate Office in the United States addressed in the following manner:

> Patriot Group International, Inc.
> Attn: Accounts Payable
> ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
> 
> Or, via email to: _____

Questions or inquiries with regard to invoices shall be directed to the Accounts Payable Department at the address above or via the following additional methods of contact:
> Facsimile: _____
> Attention: Accounts Payable

Email: ███████████████████████

Any invoice submitted to PGI must clearly show EODT's name, MSA number, and Purchase Order number. Invoices should set forth the 1) project name 2) when and where the services were provided, 3) a description of services provided, and 4) provide as attachment(s) such supporting documentation for each invoice as PGI may reasonably require. PGI shall have 15 days upon receipt of the invoice to review and accept the invoice. Once an invoice has been accepted by PGI, PGI shall pay EODT for same within ten days (10) after receipt of payment from the Government. In the event that there is a disagreement about all or any portion of an invoice, PGI will notify EODT within fifteen (15) days of receipt of the invoice, identifying the cause of disagreement, and EODT shall submit a revised invoice as appropriate. In the event that PGI fails to invoice the customer for a period that exceeds 31 calendar days, PGI shall pay EODT for approved invoices within 40 calendar days of the EODT invoice date.

Payment of any invoice by PGI shall not imply final inspection or approval of the Work nor shall it relieve EODT of its obligation under this Agreement or applicable Purchase Order. As a condition precedent to PGI making final payment under this Agreement, EODT, upon request from PGI, shall sign a Supplier Release of Claims and/or furnish documentation satisfactory to PGI and the Client, that certifies that no liens, claims or judgments of any kind, including, but not limited to, mechanics' liens or stop orders arising directly or indirectly out of any act or omission of EODT or any of its subcontractors, have attached against the work or upon any property owned by PGI or the Client. PGI is authorized to use whatever means it may deem appropriate to cause such claims to be removed or dismissed and the cost thereof, together with actual attorney's fees, shall be immediately due and payable to PGI by EODT. However, final payment shall in no way relieve EODT of liability for its obligations hereunder or for faulty, defective or non-conforming work.

PGI may withhold any sums due EODT for any work performed pursuant to this Agreement, any Purchase Order, or any other contract or subcontract between PGI and EODT, to offset sums incurred as a result of a breach by EODT or to satisfy any liability or claim PGI has against EODT arising under this Agreement, and any Purchase Order, and any Work performed hereunder.

## 6. CHANGES AND ADDITIONAL COMPENSATION

PGI, by written direction, may make changes in the Work including, but not limited to, increasing or decreasing the Work or directing acceleration of the schedule. Upon receipt of such written direction, EODT shall, within a reasonable time given the circumstances but in any event within 15 days of receipt of same and in good faith, submit its written proposal, including any increase or decrease in cost and/or the contract schedule. Unless negotiated otherwise by the Parties, unit prices, costs, labor rates, overhead, profit and fees shall be at the same rates quoted by EODT when originally calculating their pricing of the Work to be performed under the Agreement or Purchase Order(s).

If PGI accepts EODT's proposal, a written amendment to the Purchase Order via a Change Order shall be executed by both parties and provided by PGI back to EODT. Unless otherwise directed in writing,

EODT shall not commence the Work set forth in the Change Order prior to EODT signing the Change Order and PGI providing the Change Order which it has signed back to EODT.

If PGI does not accept EODT's proposal, PGI may 1) withdraw the written direction; or 2) negotiate with EODT concerning their proposal; and/or 3) provide EODT with PGI's written estimate of the reasonable cost and/or schedule adjustments appropriate to perform the Work contemplated by the written direction and then direct EDOT to perform the Work in accordance with a Directed Change Order. If EODT accepts PGI's estimate, a written Change Order shall be executed in accordance with PGI's estimated cost and schedule adjustments.

If EODT does not accept PGI's estimate, EODT shall notify PGI in writing within two (2) business days that it is performing the requested Work under protest and PGI shall pay EODT in accordance with PGI's estimates while EODT performs the work described in the Change Order. The difference between EODT's proposal and PGI's estimate shall be a "dispute" to be resolved in accordance with the Section entitled "Disputes and Choice of Law" herein.

## 7. UNFORESEEN CONDITIONS

EODT acknowledges that it has the responsibility for all Work to be performed to acquaint itself with the nature of the Work, including the written Scope of Work, the conditions under which the Work will be performed, and the conditions of the location(s) at which the Work will be performed and by accepting the Purchase Order(s) represents that this responsibility has been met. EODT also has the responsibility to exercise due diligence to anticipate certain reasonable and expected changes in conditions and as such, EODT understands and accepts the risk that conditions may differ from those known or should have been known to EODT and that neither the Total Amount of the Purchase Order(s), nor the time for performance, shall be altered.

Whenever an event occurs or condition arises which EODT believes it could not have anticipated and EODT considers it to constitute a basis for additional compensation or a change in schedule or requirements, EODT shall so notify PGI immediately by telephone, if feasible, and confirm in writing. However, notification must, in any event, be within five (5) business days after the occurrence or discovery of the condition or when discovery should have reasonably been made. EODT shall request PGI to issue a Change Order and shall provide adequate supporting information to substantiate EODT's position. EODT shall not proceed with respect to the event or condition forming the subject of the request until receipt of a Change Order, or orally and then confirmed via a Change Order. In any event, PGI's maximum liability to EODT for any such events or conditions shall be the reasonable costs incurred by EODT and extension(s) of time which have been authorized via a Change Order by PGI.

Upon receipt of notice of a request for Change Order from EODT, PGI shall take one of the following actions:

a. Initiate the process set forth in the section entitled "Changes and Additional Compensation," or give other instructions by telephone or in writing, as appropriate and consistent with that same section. Or,

b. Submit a Change Order request to the Client that would encompass EODT's proposed change. If the Client approves the submitted Change Order request, then PGI shall initiate the process set forth in the section entitled "Changes and Additional Compensation," or give other instructions by telephone or in writing, as appropriate and consistent with that same section. If the Change Order request is not approved by the Client, EODT shall continue and/or resume the Work in accordance with PGI's instructions and the situation shall not constitute a dispute subject to the "Disputes and Choice of Law" Section in the Agreement as long as PGI initiates the Change Order request or Claim within a reasonable time period and pursues same until final resolution. Until final resolution, EODT agrees to provide any supporting information requested by PGI and otherwise assist in the pursuit of said claim. Any final decision of a U.S. Department Board of Contracts Appeals or the U.S. Court of Claims in the pursuit of said Change Order or Claim shall be binding and act as a final resolution of the Claim between PGI and EODT, as well.

## 8. INSURANCE

EODT agrees that it now carries and will maintain in force, at its sole cost, during the performance of this Agreement, and shall require its subcontractors also to maintain, the following minimum levels of insurance:

a. Workers' Compensation Insurance and Employer's Liability Insurance.



3.

b. 

c. EODT shall provide PGI with certificates of such insurance or satisfactory evidence that the above requirements have been met prior to commencement of the Work.

d. The above requirements are conditions precedent to PGI's obligation to pay EODT.

e. Any waivers from these requirements must be set forth in the Purchase Order.

## 9. INDEMNIFICATION

The Parties, which for the purposes of this section shall mean PGI and EODT and their employees, hires, consultants, subcontractors, vendors, suppliers, subsidiaries, and affiliates, shall defend, indemnify and hold harmless the other Party and the client and each of their agents, officers and employees, from any and all claims and damages, causes of action, costs, expenses, reasonable attorney's fees, losses or liability, in law or in equity, of every nature or character whatsoever ("Claims") arising from or related to performance of this Agreement or any Purchase Order including, but not limited to:

a. personal injury, death, or damage to property to the extent caused by any act or omission of the other Party;

b. any violation by the Party of any applicable national, regional, state, or local law, order, rule or regulation, including violation or breach of this Agreement and/or any Purchase Order;

c. any patent or copyright infringement by the Party;

d. any injury, illness, disease, death or other harm suffered or incurred by the Party, resulting from their failure to comply with applicable health and safety procedures such as a Health and Safety Plan;

e. any injury, illness, disease, death or other harm suffered or incurred by any employee when utilizing machinery, vehicles, or equipment supplied by the the Party for that purpose.

f. claims and liens for labor performed by the Party or materials used or furnished by them to be used for the Work;

g. any obligation to PGI's Client resulting from the Party's breach of an obligation hereunder; and

h. contamination of, or adverse effects on, the environment.

## 10. HEALTH AND SAFETY

Nothing contained in this Paragraph will be construed as diminishing, altering or otherwise affecting the section of this Agreement entitled "Indemnification".

a. **Applicable to all Work:**
   1. BODT shall place the highest priority on health and safety. BODT shall be responsible for its activities and that of its employees or agents with respect to health and safety. The presence of PGI or any other party shall not affect BODT's responsibility with regard to health and safety for its operations.
   2. BODT may be required and as such should be prepared to perform the Work under site-specific Health and Safety Plans tiered under a PGI Health and Safety Plan as may be required by PGI's Client prior to the commencement of field activities.
   3. The existence of any health and safety requirement or to perform Work under a Health and Safety Plan does not relieve BODT of the responsibility to provide equipment and institute procedures affording a greater degree of protection than those specified under such a Health and Safety Plan, if such equipment, processes, and procedures are necessary for the BODT to perform the Work in a safe manner and in compliance with any applicable national, regional, state, and local regulations, such as U.S. state and federal OSHA regulations.

## 11. SUSPENSION AND TERMINATIONS

PGI shall have the absolute right at any time to immediately suspend all or any part of the Work, if the Client suspends all or part of PGI's Work by providing BODT with written Notice (e.g. Suspension," "Suspension Notice," or "Stop Work Order"), and BODT shall promptly comply with the request. BODT shall immediately comply with all directions given by PGI concerning the Suspension (such as protection of assets and the Work performed), consultations and any other matters required by PGI and shall resume the suspended Work promptly after being notified by PGI to do so. BODT shall be compensated for Work performed prior to the Suspension, as approved by the Client. BODT shall also be entitled to compensation for reasonable costs actually incurred as a result of the Suspension, as long as these costs are approved for payment by the Client. Any requests for compensation shall be in accordance with the section entitled "Changes and Additional Compensation."

PGI shall have the right at any time to terminate this Agreement or a Purchase Order with or without cause, upon written notice (e.g. "Termination," "Termination Notice," or "Termination for Convenience"). For avoidance of doubt, PGI will not terminate this Agreement or a Purchase Order for convenience unless the Client terminates the Prime Contract for convenience for which the said Purchase Order was issued or unless both parties mutually agree to a termination for convenience, or unless the Client requests that BODT be terminated for convenience, documentation of which will be provided to BODT, if the Client approves release of documentation. A Termination may take place while a Suspension is in effect. If Termination is without cause, BODT shall be compensated for Work performed through the date set forth in the Termination Notice plus reasonable costs actually incurred by BODT as a result of the termination, in accordance with the section entitled "Changes and Additional Compensation and as approved by the Client." In the event that PGI terminates BODT for cause

("Termination for Cause") and it is subsequently determined that cause did not exist for the Termination, the Termination shall be treated as a Termination without cause, and BODT shall be compensated in accordance with the section entitled "Changes and Additional Compensation."

Reasons for Termination for Cause shall include, without limitation:

a. failure by BODT at any time to provide the necessary labor, materials, supplies, equipment, or supervision for the proper performance of the Work;
b. failure to correct any material defect and/or repeated failure to correct any other defect(s) which it is obligated to correct after being notified by PGI to correct;
c. substantial failure to comply with any one or more of BODT's material obligations under this Agreement or Purchase Order including the obligation to provide data, reports, information, or documents required to be provided and/or requested by PGI;
d. failure to maintain health and safety during the performance of the Work;
e. failure to make timely payment to subcontractors or suppliers;
f. failure to maintain proper quality control procedures and required licensing and certification;
g. insolvency or debarment of BODT; and
h. any assignment, whether voluntary or involuntary, by BODT of any compensation under this Agreement or any Purchase Order for the benefit of creditors,
i. for breach of nondisclosure or misrepresentation of any relevant facts required to be disclosed concerning a conflict of interest or potential conflict of interest under this Agreement.

Upon Termination for Cause or at customer request, PGI has the right and as such may take possession, in a manner appropriate under the circumstances including at BODT's facilities, of all materials, supplies, equipment, real property, and facilities purchased or paid for by the Client or PGI and/or that PGI or the Client has any ownership rights and/or title, and complete the Work or employ any other person or persons to complete the Work.

In the event PGI terminates the Agreement and/or Purchase Order for cause, convenience, or at customer request, or the customer requests a modification to the configuration of Team Patriot, PGI shall have the right to offer employment to the OPSM Assistant and Training Manager that are employed by BODT at the time of termination or request for team configuration modification. This does not extend to any other employees of BODT and is simply a measure to ensure continuity of services to the Client.

If PGI terminates the Agreement and/or Purchase Order for cause, then BODT shall not be entitled to receive any further payment relative to the terminated Purchase Order until the Work shall be wholly completed, at which time, if the unpaid balance to be paid to BODT pursuant to this Agreement exceeds the cost and expense of completing the Work, the difference shall be paid by PGI to BODT, and if such

cost and expense to complete the Work exceeds the unpaid balance, EODT shall be liable for and shall pay said difference to PGI.

After receipt of any type of Termination action by PGI, EODT, except as otherwise required by PGI, shall deliver to PGI all data, drawings, specifications, reports, summaries, and such other information and materials as may have been prepared by EODT or received from PGI in the performance of the Work, whether completed or in process.

## 12. ARBITRATION/DISPUTES

If during the term of the Subcontract, any dispute between the Parties should arise regarding the interpretation, application, or enforcement of any of the terms of this Subcontract and such dispute cannot be resolved by the parties within thirty (30) days after either party hereto notifies the other in writing of its desire to arbitrate the dispute, then the dispute shall be settled by arbitration in accordance with the provisions of the American Arbitration Association and judgment upon the award rendered by the arbitrators may be entered in any court. For arbitration, a panel of three arbitrators shall be named, one to be selected by PGI, one to be selected by EODT, and one to be selected by the other two arbitrators. If the two arbitrators appointed by PGI and EODT cannot agree upon the third arbitrator within fifteen (15) days, then either Party may apply to the presiding judge of a court of competent jurisdiction for the appointment of a third arbitrator. The Parties may agree on a sole arbitrator.

No change in the rules of arbitration which would deprive a part of the right to be represented by counsel, to present evidence or to cross-examine witnesses presented by the other party shall be effective in any arbitration proceeding arising out of this Subcontract.

The arbitrators shall have no power to modify any of the provisions hereof and their jurisdiction is limited accordingly. The decision of the arbitrators shall be rendered within ninety (90) days after the matter has been submitted and shall be final and binding on the Parties hereto and judgment may be entered thereon, upon the application of either Party by any court having jurisdiction.

Each of the Parties shall be responsible for the expenses incurred by the arbitrator appointed by the said party and the expense, fees, and costs of the third arbitrator shall be borne equally between the parties.

EODT shall proceed diligently with performance of this Agreement, pending final resolution of any request for relief, claim, appeal, or action arising under or related to this Subcontract, excluding those instances that may arise due to non-payment of EODT's services by PGI in accordance with this Agreement.

## 13. CONFIDENTIALITY

During the performance of the Work, and for two (2) years after completion, each Party, unless otherwise agreed to in writing by the other Party, shall not release information regarding the Work or terms of this Agreement, Purchase Order, modifications (including all exhibits, attachments, reports, financial information associated with these documents and this program), and client supplied documentation to any

person other than the disclosing Party's authorized representative solely for purposes of carrying out such Party's obligations under this Agreement, except (i) for information that is in the public domain through no fault of the disclosing Party, and (ii) to the extent such release is required by law. EODT agrees to hold in confidence all confidential information relating to this client. Confidential information shall not be disclosed to anyone other than the Client and those specifically cleared by the Client to perform under this contract.

## 14. COMPLIANCE WITH IMPORT/EXPORT CONTROL LAWS

The Parties shall comply with all import and export control laws of any country, such as the United States of America's International Traffic in Arms Regulations ("ITAR") and/or the Export Administration Regulations ("EAR"), where EODT is providing and/or obtaining goods and services. Such laws may prohibit and/or require specific prior authorization, such as export licenses, in regard to utilizing items, technology, or services in another country or the provision of such items, technology, or services to certain foreign nationals.

## 15. CHOICE OF LAW

The validity, performance and enforcement of any disputes related to this Agreement shall be governed by the laws of the Commonwealth of Virginia. The Parties agree that the proper venue for any lawsuit, claim, or other type of legal or judicial actions ("Legal Action") arising hereunder shall be the state and federal courts located in Fauquier County, Virginia and the Parties specifically consent to personal jurisdiction therein.

## 16. SUBCONTRACTS AND ASSIGNMENTS

EODT must identify any potential subcontractors in its proposals. Otherwise, EODT shall not subcontract any portion of the Work without the prior written approval of PGI. Each subcontract of the EODT must contain provisions, or be made expressly subject to provisions at least as restrictive in form and content as those contained or referenced in this Agreement and applicable Purchase Order(s). EODT shall advise each prospective subcontractor of these requirements and shall ensure each subcontractor's compliance with all requirements therewith. EODT is not permitted to use a third-tier subcontractor as a billable labor provider on this contract.

EODT shall not assign, transfer, or sublet any portion of the Work required by this Agreement or applicable Purchase Order(s), nor assign any payment hereunder to anyone, without the written consent of PGI.

## 17. INDEPENDENT CONTRACTOR

EODT shall operate as, and have the status of, an independent contractor and shall not act as or be an agent or employee of PGI or PGI's Client. EODT shall be solely responsible for determining the means and methods for performing the Work. EODT's personnel shall be subject to the review and approval of PGI and shall be competent, qualified and cooperative. Key personnel shall be submitted for consideration and mutually approved by PGI and EODT within 15 days after it is determined that the position will become vacant. EODT agrees to use best efforts to perform the Services to the

highest professional standards and PGI may reject any unsatisfactory work or require correction or replacement of personnel at EODT's expense.

### 18. OWNERSHIP OF DOCUMENTS, PATENTS AND COPYRIGHTS

Unless otherwise specified in the Purchase Order(s), the Work and all records relating to it developed for PGI or PGI's Client in the performance of the Agreement, including, without limitation, all drawings, specifications, reports, summaries, samples, photographs, notes, calculations and other documents shall be deemed the property of PGI or PGI's Client. Upon termination or expiration of this agreement, EODT agrees to immediately return to PGI all documents or other materials deemed the property of PGI or PGI's client.

If EODT or its personnel produce any inventions or prepare copyrightable material as a result of the performance of this Agreement, EODT retains ownership thereof, but agrees to (1) promptly disclose such inventions or materials to PGI, and (2) with regard to same, grant to PGI and PGI's Client an irrevocable, nonexclusive, royalty-free worldwide license, and the irrevocable right to grant nonexclusive, royalty-free licenses to their affiliates without accounting to EODT, to use same.

### 19. CONTACT WITH PGI'S CLIENT

In certain situations, EODT may, and only if required in performance of the Work, have dealings with PGI's Client. Otherwise, EODT is prohibited from contacting PGI's Client for matters dealing with the Scope of Work or Compensation. If PGI's Client initiates contact with EODT or requests information or services from EODT not in accordance with the Work, EODT shall immediately report said contact and requests to PGI.

### 20. PROCUREMENT INTEGRITY AND ETHICS

EODT, in its dealing with PGI and any other lower-tier subcontractor, and in any other matter relating to or arising out of the Work agrees to abide by all Federal Acquisition Regulation (FAR including the DFAR and DOSAR) provisions regarding Procurement Integrity (FAR 3.104), Code of Business Ethics and Conduct (FAR 3.1004), and Combating Trafficking in Persons (FAR 22.1700), the Procurement Integrity Act, Truth in Negotiations Act, the Foreign Corrupt Practices Act of 1977 (Public Law 95-213), as amended, and any other similar and applicable law for the country in which the Work is performed. Prohibited actions under this Agreement include but are not limited to bribery; kick-backs; gratuities; personal relationships and other conflicts of interests with government and/or contracting officials that might provide EODT a knowing advantage; providing fraudulent or defective cost and pricing data; or the appearance of impropriety with regard to any of the foregoing.

EODT shall include this clause in all consulting agreements and subcontracts of any tier that are utilized during the performance of the Work. The terms "contract", "Contractor", and "Contracting Officer" within any of the above referenced laws or regulations shall be appropriately modified to preserve PGI's rights.

## 21. INSPECTION

EODT shall permit the representatives of PGI's Client and PGI to inspect and/or observe the Work at all reasonable times, and all Work shall be subject to acceptance and approval by PGI and PGI's Client. Under certain Scopes of Work, PGI may order such inspections as required. If the Work inspected does not meet the requirements of this Agreement, EODT shall pay for the inspections including the cost of the corrective actions that need to be taken.

## 22. HIRING OF EMPLOYEES

The Parties agree that during the term of this Agreement, and any Purchase Order(s) still in performance, and for a period of one (1) year thereafter that they will not hire either directly or indirectly any employee of the other Party, except as provided in Article 11 of this Agreement. This clause applies to any subsidiary, affiliate, or other entity owned or controlled by the Party. Further, the term "hire" as used in this paragraph includes any terms of financial, material, or like remuneration, monetary or otherwise offered to the Party's employee.

## 23. USE OF EQUIPMENT PROVIDED

In the event either Party uses the other Party's equipment, materials, labor, supplies or facilities, the Party shall reimburse the other Party at an agreed upon predetermined rate. Further, each Party assumes all responsibility for physical damage to such equipment, materials, labor, supplies or facilities used by the other Party or his agents or employees. The Party accepts any and all of the other Party's equipment, materials, labor, supplies or facilities as furnished.

In the event EODT is provided equipment, materials, or other property which is owned or will be owned by the Client (e.g. GFE of CAP), then EODT shall use the required care to safe-guard such items, assumes all responsibility for the physical damage or loss of such items as well as accepting such items as furnished.

## 24. AUDIT

An independent auditor authorized by PGI and PGI's Client shall have access, at reasonable times, to EODT's personnel job descriptions, books, records, correspondence, plans, receipts, vouchers and data stored in computers pertaining to the Work, for purposes of auditing and verifying the accuracy of costs and hours relating to the Work for which PGI is to credit EODT hereunder or for any other reasonable purpose. EODT shall preserve and provide audit access to all information referred to above for a period of not less than three (3) years after completion and acceptance of the Work or termination of the Agreement.

If EODT's charges, or any part of them, are calculated on fixed rates or unit prices or is a specified sum, PGI's independent auditor or Client's representatives shall be provided with sufficient documentation to verify and validate such charges.

## 25. NOTIFICATION OF CONFLICT OF INTEREST

EODT and its lower-tier subcontractors warrant that no conflict of interest exists such as an organizational conflict of interest (OCI) between the Services and Products to be provided under this Agreement and EODT's other activities in accordance with FAR 9.505. EODT shall immediately advise PGI of any such conflict of interest, potential conflict of interest, or the appearance of a conflict of interest which arises during performance of any Purchase Order(s) or subsequent Change Order.

EODT shall include this clause in all consulting agreements and subcontracts of any tier that are utilized during the performance of the Work. The terms "contract", "Contractor", and "Contracting Officer" within any of the above referenced laws or regulations shall be appropriately modified to preserve PGI's rights.

For breach of nondisclosure or misrepresentation of any relevant facts required to be disclosed concerning conflicts of interest, PGI may terminate this Agreement and any Purchase Order(s) or subsequent Change Order for Cause, disqualify EODT for subsequent related contractual efforts, and pursue such other remedies as may be permitted by law or this Agreement. If, however, in compliance with this clause, EODT discovers and promptly reports an OCI (or potential thereof) subsequent to this Agreement and/or Purchase Order(s) or Change Order award, the PGI Procurement Manager may permit continued performance under EODT's proposed plan of mitigation or terminate this Agreement for convenience if such termination is deemed to be in the best interests of PGI.

## 26. ATTORNEY'S FEES

If a dispute arises relating to the performance of the Work covered by this Agreement, and legal or other costs are incurred by either Party, it is agreed that the prevailing Party shall be entitled to recover all reasonable costs incurred in the defense of the claim, including staff time at current billing rates, court costs, attorney's fees and expenses, and other claim-related expenses.

## 27. INTERPRETATIONS OR INCONSISTENCIES

It shall be the obligation of EODT to exercise due diligence to bring to the attention of PGI at the earliest possible time any ambiguities, discrepancies, inconsistencies, or conflicts regarding the language or requirements of this Agreement or between any documents arising out of this Agreement. Any inconsistency in this Agreement or any Purchase Order(s) shall be resolved by giving precedence in the following order: (a) Purchase Order to include all attachments and exhibits; (b) this Agreement; (c) representations and other instructions; (d) other documents, exhibits, and attachments; and (e) the specifications. Sections of this Agreement mislabeled or referenced incorrectly shall not affect their validity. If any portion of this Agreement is deemed invalid, such a determination will not affect the validity of the rest of this Agreement.

## 28. ENTIRE AGREEMENT

This Agreement, including all attachments duly incorporated herein, constitutes the entire Agreement between the Parties and supersedes all previous agreements and understandings related to any Work to be or might be performed under this Agreement. Execution of this Agreement or any Purchase Order via

facsimile or electronic scan delivered via email is permitted and will not affect the validity of said Agreement or Purchase Order.

## 29. NOTICES

All notices, requests, instructions, or other communication regarding the performance of any Work or matter under this Agreement ("Notice") shall be given in writing to the authorized representatives designated in the Purchase Order for matters relating to Purchase Order performance. All other Notices shall be given in writing to the representatives of the Parties as designated below.

Notices to Patriot Group International, Inc.:



Warrenton, VA 20186

Notices to EODT:



## SIGNATURES OF THE PARTIES ARE SET FORTH BELOW

IN WITNESS WHEREOF, the parties hereto have executed this Subcontract as of the day and year first above written.

**EODT**

BY:

*Tracy L. Agosti*

NAME: Tracy L. Agosti
TITLE: Director, Contracts
DATE: September 5, 2012

**PATRIOT GROUP INTERNATIONAL, INC.**

BY:

*Alan C. Buford*

NAME: Alan C. Buford
TITLE: President
DATE: 5 September, 2012